**Amado A. DAVID, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 76–1263.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1977.

Decided Jan. 17, 1977.

Dale E. McCoy, Russellville, Ark., for petitioner.

Philip Wilens, Chief, Gov't. Regulations & Labor Section, Crim. Div., James P. Morris, Atty., and Robert Kendall, Jr., Atty., Dept. of Justice, Washington, D. C., for respondent.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

This is a petition to review an order of the immigration judge (special inquiry officer) compelling petitioner's voluntary departure in lieu of deportation.

Petitioner, Amado A. David, is a native and citizen of the Philippines. He lawfully entered the United States on January 26, 1973, as a nonimmigrant spouse of a temporary worker pursuant to 8 U.S.C. § 1101(a)(15)(H). He was authorized to remain in this country until July 18, 1975. His wife is a registered nurse practicing in Russellville, Arkansas. In February 1974 petitioner undertook a course of study which culminated in his being certified by Arkansas authorities as a licensed practical nurse in January 1975. As a nonimmigrant alien spouse, petitioner could not be employed unless the Department of Labor certified that there was a need for such employees in a geographic area and the Immigration and Naturalization Service issued a visa authorizing temporary employment. In January 1975 petitioner applied for alien employment certification to the Department of Labor. The Russellville Employment Security Division certified the critical need for licensed practical nurses in the Russellville area. During the period February 2–24, 1975, petitioner worked a total of eight nights at the Dardanelle Convalescent Home, where he received a wage of $2.90 per hour. On February 24 petitioner was notified that the Department of Labor had denied his application for certification. Thereupon petitioner voluntarily terminated his employment and has remained unemployed until this time. In March 1975 Border Patrol agents learned of petitioner's employment and went to his home and took his visa from him.

Petitioner was served with an order to show cause why he should not be deported. At the deportation hearing, the immigration judge (special inquiry officer) found that petitioner was deportable pursuant to 8 U.S.C. § 1251(a)(9).[1] The immigration judge granted petitioner's motion for the discretionary relief of voluntary departure.[2] On appeal to the Board of Immigration Appeals, the immigration judge's order was affirmed. Petitioner thereupon timely filed the instant petition for judicial review pursuant to 8 U.S.C. § 1105a.

Petitioner alleges four grounds for reversal of the order of the Board of Immigration Appeals: (1) that petitioner was denied due process of law by reason of the Immigration and Naturalization Service (INS) failing to explain or inform him of his substantive and procedural rights; (2) that the order of the immigration judge is arbitrary, capricious, and repugnant to principles of justice and fairness; (3) that appellant was denied due process of law by reason of the immigration judge's lack of autonomy from the INS and his association with the INS trial attorney presenting the government's case; and (4) that petitioner's visa was revoked without a revocation hearing, thereby violating petitioner's right to due process of law.

1. This section provides in part:
   Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
   (9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted  *  *  *
   In addition, 8 C.F.R. § 214.1(c) provides that any unauthorized employment by a nonimmigrant constitutes a failure to maintain status within the meaning of 8 U.S.C. § 1251(a)(9).

2. Voluntary departure avoids the stigma of compulsory ejection, facilitates the possibility of return to the United States, and allows the applicant to select his destination. *See* 2 C. GORDON & H. ROSENFELD, IMMIGRATION LAW AND PROCEDURE § 7.2, at 7–12 to 7–22 (1976).

■ Petitioner's first allegation is clearly without merit. In addition to the fact that the pertinent statutes and regulations are published in the United States Code and the Code of Federal Regulations, the petitioner admitted at his deportation hearing that he had been informed when he first entered the country that he had to get approval from the government before he could accept employment.

■ Petitioner next alleges that the decision of the immigration judge was arbitrary, capricious, and repugnant to principles of fairness and justice. This allegation raises two distinct claims. First, petitioner alleges that the immigration judge failed to exercise his discretion to order relief other than deportation. However, the discretionary alternatives to deportation are few and narrowly circumscribed. Although the record is not clear, it appears that the immigration judge was correct in informing petitioner that the only available discretionary relief was voluntary departure.[3] Second, because petitioner does not deny that he committed the acts charged and that such acts are grounds for deportation, his allegation in this regard amounts to an allegation that the deportation statute is a violation of his rights to substantive due process.[4] The Supreme Court has, in the strongest language, indicated that the validity of distinctions drawn by Congress in the field of immigration is not a proper subject for judicial inquiry. See, e.g., Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954), quoted with approval in Kleindienst v. Mandel, 408 U.S. 753, 766–767, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972).

■ Petitioner's third alleged basis for relief is that the procedure at his deportation hearing denied him due process. Again, petitioner makes two discernible claims in this regard. First, he alleges that the immigration judge cannot be an impartial judge because of his lack of autonomy from the INS. A similar argument was rejected by the Supreme Court in Marcello v. Bonds, 349 U.S. 302, 311, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). See also Hosseinmardi v. Immigration and Naturalization Service, 405 F.2d 25, 27–28 (9th Cir. 1968); Schleich v. Butterfield, 252 F.2d 191, 193 (6th Cir. 1958). Second, petitioner alleges that the immigration judge's relationship with the INS trial attorney who prosecuted petitioner's case amounts to a denial of due process. This allegation is based on the facts that the immigration judge and the trial attorney met together outside the presence of petitioner's counsel prior to the hearing and that, at the close of the hearing, they made arrangements to have lunch together. Assuming these facts to be true, petitioner has failed to show how he was prejudiced thereby. The record indicates that the immigration judge gave petitioner a complete opportunity to present his case and conducted the hearing with impartiality. At the hearing petitioner admitted doing the acts which constituted a deportable offense and the immigration judge's order is therefore supported by "reasonable, substantial, and probative evidence on the record considered as a whole". 8 U.S.C. § 1105a(a)(4). In addition, the immigration judge granted petitioner's motion for voluntary departure, which was the only discretionary relief to which petitioner was entitled.

■ Petitioner's final claim in that Border Patrol agents took his visa from him without affording him a prior hearing, and that this violated his due process rights. This claim is without merit. See DaCruz v. Holland, 241 F.2d 118 (3d Cir. 1957).

---

3. The immigration judge is required by regulation to inform an alien subject to deportation of any discretionary relief to which he is entitled. 8 C.F.R. § 242.17.

Petitioner fails to suggest any discretionary relief except to note that 8 U.S.C. § 1251(a) uses the words "shall, upon the order of the Attorney General, be deported * * *". This is not the type of discretionary relief contemplated by the above cited regulation, as to eligibility under specific sections of the Act listed therein, which requires specific advice by the immigration judge.

4. Petitioner relies on Lieggi v. Immigration and Naturalization Service, 389 F.Supp. 12 (N.D.Ill. 1975). On appeal, the Seventh Circuit summarily reversed Lieggi. 529 F.2d 530 (7th Cir. 1976) (Table).

Although we find no basis to require reversal, we express our concern on the basis of the facts involved over the harsh remedy of deportation ordered here. The petitioner in good faith sought employment certification in order to work as a practical nurse. While waiting for the anticipated certification because of his financial situation and the critical need for such help in the area, he rendered assistance, granted, without the certificate, for a period of eight days. He ceased work immediately upon being notified that the Department of Labor had denied his application for certification.

■ We deem petitioner's deportation indeed an extremely harsh consequence for the conduct involved. The record is devoid of any evidence of intent to recklessly disregard the immigration law. It should be obvious that deportation will cause severe hardship on petitioner and his wife. As in *Vergel v. Immigration and Naturalization Service,* 536 F.2d 755 (8th Cir. 1976), we think there is presented here a substantial basis upon which a district director could place petitioner in a "deferred action category" allowing him to remain in this country on humanitarian grounds. See Immigration and Naturalization Service Operating Instruction 103.1(a)(1)(ii); INS Form G–312 (1975).[5] We therefore stay the issuance of our mandate for ninety days to allow petitioner an opportunity to petition the district director for a discretionary stay. As in *Vergel, supra,* 536 F.2d at 758, we think it appropriate for the district director to make further inquiry to that end. *Cf.*

*United States v. McAllister,* 395 F.2d 852 (3rd Cir. 1968).

The order compelling voluntary departure is affirmed.

5. This internal operation instruction provides in part:

(ii) Deferred action. In every case where the district director determines that adverse action would be unconscionable because of the existence of appealing humanitarian factors, he shall recommend consideration for deferred action category. His recommendation shall be made to the regional commissioner concerned on Form G–312, which shall be signed personally by the district director. Interim or biennial reviews should be conducted to determine whether approved cases be continued or removed from deferred action category. (Revised)

When determining whether a case should be recommended for deferred action category, consideration should include the following: (1) advanced or tender age; (2) many years presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral or subversive activities or affiliations—recent conduct. If the district director's recommendation is approved by the regional commissioner the alien shall be notified that no action will be taken by the Service to disturb his immigration status, or that his departure from the United States has been deferred indefinitely, whichever is appropriate. (Revised)