**WAN CHUNG WEN, Petitioner,**

v.

**Benedict J. FERRO, District Director Immigration & Naturalization Service, Respondent.**

**No. CIV–82–541.**

United States District Court, W. D. New York.

July 26, 1982.

Courtland LaVallee, Michael Ferdman, Buffalo, N. Y., for petitioner.

Roger P. Williams, U. S. Atty., Jack Penca, Asst. U. S. Atty., Buffalo, N. Y., for respondent.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Petitioner, a Chinese-style cook-restaurateur who is presently under a warrant of deportation issued by respondent District Director of the U. S. Immigration and Naturalization Service ("INS"), seeks a writ of habeas corpus in challenge, not to the deportation order, but to respondent's unexplained denial of petitioner's request for deferred action status during the pendency of his petition for a visa preference as a valued worker. Petitioner urges that he is denied due process of law and equal protection by respondent's failure to explain his denial of the desired status. On July 19, 1982 I issued an Order denying the relief sought by petitioner. This memorandum sets forth the basis for such denial.

There is no quarrel that aliens, even those whose presence in this country is unlawful, are entitled to due process protection under the Fifth and Fourteenth Amendments. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 48–51, 70 S.Ct. 445, 453–454, 94 L.Ed. 616 (1950); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896). Nor can it be doubted that due process protection extends generally to determinations affecting an alien's "right to stay and live and work in this land of freedom." *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945). *See also Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1037 n.30 (5th Cir. 1982). However, this abstract proposition requires for its implementation that each case be examined in all its attendant circumstances to determine what process is due to the party involved. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

"Deferred-action" or "non-priority" status is an informal administrative stay of deportation, implemented by INS Operating Instruction ("OI") 103.1(a)(1)(ii), having no effect on an alien's adjudication as deportable but potentially leading to an extended stay in this country. *See Lennon v. I. & N. S.*, 527 F.2d 187, 191 n.7 (2d Cir. 1975). In *Soon Bok Yoon v. Immigration & Naturalization Serv.*, 538 F.2d 1211, 1213 (5th Cir. 1976), the court distinguished deferred action status from statutory and regulatory forms of relief, for which aliens may formally apply, characterizing deferred action as "in the nature of a voluntary stay of the agency's mandate *pendent lite*, issued in large part for the convenience of the INS." Rejecting the plaintiff's contention that the immigration judge erred in failing to apprise her of the availability of deferred action classification, the court found that "[t]he decision to grant or withhold nonpriority status * * * lies within the particular discretion of the INS," and refused to hold that INS could not "create and employ such a category for its own administrative convenience without standardizing the category and allowing applications for inclusion in it." *Ibid.*

An apparently contrary conclusion was reached by the United States Court of Appeals for the Ninth Circuit in *Nicholas v. Immigration and Naturalization Serv.*, 590 F.2d 802 (1979), holding that OI 103(a)(1)(ii) is a directive provision conferring a substantive benefit upon aliens based upon humanitarian considerations, rather than existing solely for the convenience of the INS. Consequently it was held that "the decision of an INS District Director upon an application for non-priority status will stand unless it so departs from an established pattern of treatment of others similarly situated without reason, as to be arbitrary and capricious, and an abuse of discretion." 590 F.2d at 808.

The decision in *Nicholas* was recently criticized and rejected in *Zacharakis v. Howerton*, 517 F.Supp. 1026 (S.D.Fla.1981), the court observing:

"Should the Court find that the instruction is more than an intra-agency

guideline for the informal exercise of compassion where to do otherwise would be unconscionable and that it confers a substantive right on aliens to apply for inclusion with all attendant due process, the Court will have legislated an additional remedy not now provided by the Immigration Act or Federal Regulations. Both administrative and judicial economy would seem ill-served in the face of statutory and discretionary remedies already extant." 517 F.Supp. at 1028.

The court thus rejected the petitioner's challenge to the INS District Director's refusal to recommend deferred action status for him, holding "that I.N.S. guideline OI 103.1(a)(1)(ii) confers no substantive right on aliens to seek inclusion in the deferred action category." *Ibid.*

I find the reasoning of the *Zacharakis* court persuasive, and accordingly adopt it here. Moreover, the rationale of the *Nicholas* decision has been severely undermined by a recent amendment of OI 103.-1(a)(1)(ii). At the time *Nicholas* was decided, and apparently also *Zacharakis,* this operating instruction required the District Director to recommend deferred action whenever he or she

> "determines that adverse action would be unconscionable because of the existence of appealing humanitarian factors, * * * [including] (1) advanced or tender age; (2) many years' presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral or subversive activities or affiliations—recent conduct."

*Nicholas v. Immigration and Naturalization Serv., supra,* 590 F.2d at 805 n.9. Since *Nicholas,* and presumably in reaction to that decision, OI 103.1(a)(1)(ii) has been so altered that it is no longer possible to conclude that it is intended to confer any benefit upon aliens, rather than merely for the INS's own convenience, and now reads in relevant part as follows:

> "(ii) *Deferred action.* The district director may, in his discretion, recommend consideration of deferred action, an act of administrative choice to give some cases lower priority and in no way an entitlement, in appropriate cases. (Revised)

The deferred action category recognizes that the Service has limited enforcement resources and that every attempt should be made administratively to utilize these resources in a manner which will achieve the greatest impact under the immigration laws. In making deferred action determinations, the following factors, among others, should be considered:

> (A) the likelihood of ultimately removing the alien, including:

> (1) likelihood that the alien will depart without formal proceedings (e.g., minor child who will accompany deportable parents);

> (2) age or physical condition affecting ability to travel;

> (3) likelihood that another country will accept the alien;

> (4) the likelihood that the alien will be able to qualify for some form of relief which would prevent or indefinitely delay deportation;

> (B) the presence of sympathetic factors which, while not legally precluding deportation, could lead to unduly protracted deportation proceedings, and which, because of a desire on the part of the administrative authorities or the courts to reach a favorable result, could result in a distortion of the law with unfavorable implications for future cases;

> (C) the likelihood that because of the sympathetic factors in the case, a large amount of adverse publicity will be generated which will result in a disproportionate amount of Service time being spent in responding to such publicity or justifying actions;

> (D) whether or not the individual is a member of a class of deportable aliens whose removal has been given a high enforcement priority (e.g., dangerous criminals, large-scale alien smugglers, narcotic drug traffickers, terrorists, war criminals, habitual immigration violators). (Revised)"

I thus conclude that petitioner has no colorable liberty or property interest in, and hence no claim to inclusion in the INS's deferred action category; consequently he has no claim to an explanation of respondent's refusal to recommend his inclusion therein. Petitioner's legitimate liberty interest in remaining in this country has received appropriate due process protection through the formal statutory and regulatory procedures afforded him.